UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J & J SPORTS PRODUCTIONS, INC.,
as Broadcast Licensee of the July 16, 2005
Hopkins-Taylor Program,

                                        Plaintiff,

        -v-

CLAUDIO KOSORIA, ET AL.,

                                        Defendants.

Case No. 06-CV-2102 (KMK)

OPINION & ORDER

Appearances:

Julie Cohen Lonstein, Esq.
Lonstein Law Offices P.C.
Ellenville, New York
*Counsel for Plaintiff*

KENNETH M. KARAS, District Judge:

        This inquest for damages is before the Court on Plaintiff's Motion for a Default

Judgment.  Plaintiff, J & J Sports Productions Inc., brought this action against El Cassandra

Corp. (II) and Claudio Kosoria, individually and as an officer of Maunaloa Nite Club Restaurant

Corp. (collectively "Defendants").  Plaintiff alleges that Defendants violated sections 553 and

605 of the Federal Communications Act of 1934.  *See* 47 U.S.C. §§ 553, 605.

        In the Complaint, filed on March 17, 2006, Plaintiff alleges that Defendants received and

displayed a professional boxing match between Bernard Hopkins and Jermain Taylor (the

"Program"), which was broadcast by Plaintiff on July 16, 2005.  The Complaint further alleges

that Plaintiff held the exclusive rights to distribute the Program, which Plaintiff transmitted by

satellite, and that Defendants received and displayed the Program without authorization.

Defendants were served with the Complaint on April 18, 2006, but did not answer.  On June 30, 2006, the Clerk of the Court issued a Certificate of Default.  Plaintiff moved for a default judgment against the Defendants on October 6, 2006, requesting statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii).  The Motion was served upon Defendants, who did not respond or attempt, in any way, to participate in the proceeding.

## I.  Background

Plaintiff held the exclusive license to exhibit the Program within the United States.  (Aff. of Joseph Gagliardi, Ex. A ("Gagliardi Aff.").)  Exercising this right, Plaintiff entered into licensing agreements with various commercial entities permitting them to broadcast the Program to their patrons.  (*Id.* ¶ 3.)  Defendants, however, did not contract with Plaintiff for the rights to broadcast the Program.  (*Id.* ¶ 6.)  In order to police its rights, Plaintiff hired investigators to identify establishments that unlawfully displayed the Program.  (*Id.* ¶ 4.)  On July 17, 2005, at 12:25 a.m., one of Plaintiff's investigators entered El Compy Bar Restaurant, which is owned and operated by Defendants and is located at 264 Sherman Avenue, New York, New York.  (*Id.* ¶ 7.)  The investigator observed one television set exhibiting the Program.  (*Id.* ¶ 7.)  According to the investigator, there were 45 patrons in the establishment, which had a capacity of approximately 150.  (*Id.* ¶ 7, Ex. C.)

The Program was transmitted through an encrypted satellite signal.  (Compl. ¶ 19.) Plaintiff encrypted the signal to prevent unauthorized establishments from intercepting and displaying the Program.  (Gagliardi Aff. ¶ 10.)  Because the Program was encrypted, it would have been impossible for Defendants to display the Program without intentionally disabling or

otherwise evading the encryption.[1]  (*Id.*)

## II.  Discussion

### A.  General Principles

When a default judgment is entered, all allegations regarding liability are accepted as true, but allegations regarding damages must be supported by evidence.  *See Kingvision Pay-Per-View Ltd. v. Palaguachi,* No. 06 Civ. 2509, 2007 WL 42994, at *3 (E.D.N.Y. Jan. 3, 2007).  "The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone, as long as [the Court has] ensured that there was a basis for the damages specified . . . ."  *Kingvision Pay-Per-View Ltd. v. Espinosa*, No. 05 Civ. 10178, 2007 WL 625362, at *1 (S.D.N.Y. Feb. 28, 2007) (quotations and citation omitted).  Such a basis exists here.

Plaintiff's default judgment establishes Defendants' liability under sections 553(1) and 605(a) of the Federal Communications Act.  However, a claimant who establishes liability under these sections may only recover pursuant to one.  *See, e.g.*, *id.* at *2.  In choosing between the two, courts generally "award damages pursuant to 47 U.S.C. § 605 because it provides for greater recovery."  *Kingvision Pay-Per-View v. Castillo Rest. Corp.*, No. 06 Civ. 00617, 2007 WL

---

[1]While Plaintiff is unable to identify the exact method that Defendant used to intercept the Program, Plaintiff states that there are three primary means to unscramble an encrypted signal without paying the commercial fee.  These are:  1) using a "black box" which unscrambles the signal of the pay-per-view broadcast; 2) falsely representing that the commercial establishment is a residential establishment in order to purchase the signal at the lower residential rate; and 3) using an illegal "splice" from an residential location adjacent to the commercial establishment to divert the signal from the residential location to the commercial establishment.  (Gagliardi Aff. ¶ 10.)  These methods would have required the commercial establishment to engage in a willful act with the intent to receive the Program without paying the commercial fee.  (*Id.*)

841804, at * 3 (E.D.N.Y. Jan. 16, 2007); *see also Kingvision Pay-Per-View v. Tardes Calenas*, No. 04 Civ. 3624, 2005 WL 4850311, at *3 (E.D.N.Y. Nov. 29, 2005) ("[W]here the defendant is found to have violated both statutes, the court should award damages only pursuant to section 605, which generally affords higher damages."). Accordingly, the Court will award damages under section 605.

A plaintiff who establishes liability under section 605 is entitled to statutory damages up to $10,000, but not less than $1000. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Additionally, when a plaintiff can establish that a defendant's conduct was willful, the plaintiff is entitled to enhanced damages of up to $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). Each of these damages claims is addressed below.

B.  Statutory Damages Under 47 U.S.C. §605(e)(3)(C)(i)(II)

Pursuant to section 605(e)(C)(i)(II), the Court must assess statutory damages that it "considers just," "in a sum of not less that $1,000 or more than $10,000." 47 U.S.C. §605(e)(3)(C)(i)(II). In the Second Circuit, there are two primary approaches to determining what amount of damages is just under this Section. Courts either award flat amounts that include both enhanced and statutory damages, or compute statutory damages based on the number of patrons in the establishment. *See, e.g.*, *Kingvision Pay-Per-View Ltd. v. Arnoat,* No. 06 Civ. 3616, 2007 WL 625367, at *3 (S.D.N.Y. Feb. 28, 2007); *Kingvision Pay-Per-View Ltd. v. Espinosa*, No. 05 Civ. 10178, 2007 WL 625362, at *3 (S.D.N.Y. Feb. 28, 2007); *Kingsvision Pay-Per-View, Ltd. v. Cardona*, No. 03 Civ. 3839, 2004 WL 1490224, at *3 (S.D.N.Y. June 30, 2004).

Plaintiff urges the Court to adopt a lesser-used approach of computing statutory damages

by multiplying capacity (as opposed to the actual occupancy) of the establishment by the residential cost of the program.  (Pl.'s Mem. of Law 6.)  While this approach has been used in this Circuit before, *see, e.g.*, *Garden City Boxing Club v. Bello,* No. 05 Civ. 1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005), the Court declines to adopt this approach here because it is too speculative and because it has a punitive, rather than compensatory, element.  *See J&J Sports Prods., Inc., v. Guerra*, No. 06 Civ. 3382, 2007 WL 539142, at *3 (E.D.N.Y. Feb. 16, 2007) (noting that "statutory damages are not intended to 'fine' defendants, but to compensate plaintiffs" and that section 605 "provides another mechanism – the enhanced damages . . . – for accomplishing" deterrence); *Garden City Boxing Club, Inc. v. Perez,* No. 05 Civ. 3713, 2006 WL 2265039, at *6 (E.D.N.Y. Aug. 8, 2006) (refusing to base an award on the capacity of the restaurant on the grounds that such a determination is too speculative, as the restaurant may not have been filled to capacity before or after the investigator's visit).

Instead, the Court shall adopt the per-patron approach.  This approach has two primary benefits.  First, it is the most widely-used approach in this Circuit for calculating damages pursuant to section 605.  *See Castillo*, 2007 WL 841804, at *4 ("In cases where there is uncontradicted evidence of the number of patrons viewing the match in an establishment, courts have used the [per-patron] approach . . . ."); *Drake,* 2006 WL 2927163, at *3 ("Most courts . . . have assessed damages based on the number of patrons in the establishment at the time of transmission.").  Second, this approach most accurately takes into account what is fair to both Parties.  *See Palaguachi*, 2007 WL 42994, at *3 (noting that the per-patron approach "takes into account the pecuniary loss to plaintiff . . . and the financial resources, needs, and earning ability of the defendant, as well as the burden that a greater damage award would impose on the

5

defendant"); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490

(S.D.N.Y. 1999) ("[Under the per-patron approach,] Plaintiff is . . . fully compensated for any

loss it suffered . . . [and] by divesting the defendants of any profits, it assures that they reap no

benefit from unlawful action.").

 Applying this approach, the Court awards statutory damages of $2472.75.  This amount is

determined by multiplying the number of patrons observed by Plaintiff's investigator by the

residential cost of Program – the price those patrons would have had to pay to purchase the

Program individually.  Plaintiff's investigator observed forty-five patrons in the bar, and the

residential cost of the Program, as attested to in Plaintiff's papers, was $54.95.  (Gagliardi Aff. ¶

10.)  These figures yield $2472.75 in statutory damages.

 <u>C.  Enhanced Damages Under 47 U.S.C. §605(e)(3)(C)(ii)</u>

 Under 47 U.S.C. § 605(e)(3)(C)(ii), the Court is entitled to provide enhanced damages of

up to $100,000 when a violation of 47 U.S.C. § 605(a) has been committed willfully for the

purpose of direct or indirect financial gain.  *See* 47 U.S.C. § 605(e)(3)(C)(ii).  As noted, this type

of encrypted programming cannot be intercepted without engaging in a willful act.  (Gagliardi

Aff. ¶ 10.)  This is sufficient to establish that Defendants' infringement was willful.  *See Googies*

*Luncheonette*, 77 F. Supp. 2d at 490 ("Signals do not descramble spontaneously, nor do

television sets connect themselves to cable distribution systems.").  Therefore, Plaintiff is entitled

to some amount of additional enhanced damages.

 In assessing the degree of enhanced damages to award, courts consider several factors.

"These factors include (1) repeated violations over an extended period of time; (2) substantial

unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or

charging premiums for food and drinks." *Drake*, 2006 WL 2927163, at *4.

Of these four factors, Plaintiff has established that the first and second are present here. Defendants are repeat violators.  On at least one prior occasion, Defendants illegally displayed an encrypted program to their patrons.  (Lonstein Aff., Ex. B.)  Moreover, although Defendants did not charge an admission fee, as a bar and restaurant, it is likely that Defendants' "exhibition of the Event led to an increase in patrons, who, in turn, likely purchased food and/or drinks while viewing the Event." *Palaguachi*, 2007 WL 42994, at *4; *see also Tardes Calenas*, 2005 WL 4850311, at *5 ("Indeed, it can be inferred that [defendant] was able to draw patrons into its establishment by offering them the ability to view the Event.  Thus, [defendant's] exhibition of the Event . . . very likely led to an increase in patrons and profits from food and drinks sold.").

In light of the fact that Defendant has engaged in this activity on at least two occasions and has likely derived financial benefit in the way of the sale of food and drinks, it is necessary to award damages in an amount that makes infringement less profitable than lawfully obtaining the service.  The Court therefore awards $7500 in enhanced damages.  This award is consistent with other awards provided in this Circuit for comparable infractions.  *See Arnoat*, 2007 WL 625367, at *3 (awarding $7500 in total damages); *Drake*, 2006 WL 2927163, at *5 (awarding enhanced damages of "three times the per-patron" statutory damages); *Garden City Boxing Club v. Rosado*, 05 Civ. 1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2006) (awarding $10,000 in enhanced damages where there was evidence of repeat violations); *Tardes Calenas*, 2005 WL 4850311, at *6 (awarding $7,500 in enhanced damages where the sale of food and drink increased the profitability of infringing); *Cardona*, 2004 WL 1490224, at *4 (awarding $10,000 in enhanced damages).

D.  Attorney's Fees and Costs

Plaintiff also seeks attorney's fees in the amount of $700 and costs in the amount of $900. An award for costs including reasonable attorneys fees in required under 47 U.S.C. § 605(e)(3)(B)(iii).  In the Second Circuit, "[a]ll applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).  Here, counsel for Plaintiff submitted an affidavit detailing the hours, the date, and the specific nature of the work done in the relevant time period.  According to the affidavit, 2.75 hours of attorney time and 2 hours of paralegal time were devoted to this matter.  These hours are reasonable.  The Court further finds reasonable Plaintiff's rates of $200/hour for attorney time and $75/hour for paralegal time, and the Court finds that the work performed was neither redundant nor unnecessary.  *See Palaguachi*, 2007 WL 42994, at *4 (finding rates of "$200 per hour for work performed by an attorney and $75 per hour for work performed by a paralegal" to be reasonable). Therefore, the Court awards the $700 requested in attorney's fees.

As a result of this litigation, Plaintiff also incurred a $200 service-of-process fee as well as the $250 filing fee.  (Lonstein Aff. ¶ 3.)  These fees are also reasonable.  *See Garden City Boxing Club v. Gil*, 05 Civ. 8235, 2006 WL 2175306, at *2 (S.D.N.Y. Aug. 3, 2006) (holding that the cost of service and filing fee are reasonable costs which are included under 47 U.S.C. § 605).  Additionally, the Court may, but is not obligated to, award costs for investigative fees.  *See Mendez*, 2006 WL 3833014, at *6.  Investigative fees are held to the same standard as attorney fees and a party requesting investigative fees must supply contemporaneous time records to

8

substantiate the request.  *Id.*  Plaintiff did not submit detailed time records; rather, Plaintiff merely submitted an affidavit stating that Plaintiff paid $450 for investigative services.  This is insufficient.  *See id.* (denying investigative fees where plaintiff "merely submit[ed] an affidavit stating that it 'paid a fee of $275.00 [to] the auditor in connection with the identification of each illegal location'" (alterations in original).  Plaintiff's request for investigative fees is therefore denied.

Accordingly, Plaintiff is awarded attorney's fees and costs in the amount of $1150.

E.  Injunctive Relief

Plaintiff's Complaint requests injunctive relief.  However, Plaintiff's memorandum of law fails to address this issue and Plaintiff offers no evidence in support of such relief.  The Court therefore denies Plaintiff's request for injunctive relief.  *See Arnoat,* 2007 WL 625367 at *5 ("[Plaintiff's] memorandum of law . . . fails to brief the question of why it is entitled to an injunction.  Nor has it submitted any evidence on this question.  Accordingly, no injunction should issue.").

## III.  Conclusion

For the foregoing reasons, Plaintiff is awarded $2472.75 in statutory damages, $7500 in enhanced damages, and $1150 in costs, for a total of $11,122.75.  Defendants are jointly and severally liable for this judgment.  *See Espinosa*, 2007 WL 625362, at *5 (finding joint and several liability is appropriate where it is alleged that both defendants were responsible for the acts giving rise to liability).  The Clerk of the Court is directed to terminate the motion (Docket No. 10).

SO ORDERED.

Dated: May **31**, 2007
New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

10